UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

**MICHAEL T. ESTEP,**

    **Plaintiff,**

v.

**Case No. 1:22-cv-474**
**JUDGE DOUGLAS R. COLE**
**Magistrate Judge Bowman**

**COMMISSIONER of SOCIAL SECURITY,** *et al.*,

    **Defendants.**

## OPINION AND ORDER

This is not your typical Social Security case. The central legal issue is not whether the Social Security Administration (SSA) erred in granting or denying benefits. Rather, it is whether a private citizen—a citizen who is not even seeking Social Security benefits—can sue the United States for money damages and equitable relief outside of the agency adjudication process based on claims that the agency's alleged failure to follow its own internal procedures financially harmed him. More specifically, Michael Estep filed this suit, pro se, against the SSA's Acting Commissioner, and one of its employees, alleging that they did not properly treat him as a non-attorney representative for Social Security claimants residing in Cambodia. (Compl., Doc. 3). He claims that the SSA's agents interfered with his ability to perform his contractual commitments to his Cambodian claimants, violated his due process and equal protection rights, and violated the SSA's own governing regulations to his detriment when they adjudicated the claimants' benefits. (*See* Doc. 3, #60–68).

Estep seeks $500,000 in compensatory damages, along with punitive damages, and declaratory and injunctive relief ordering the Commissioner to recognize him as a non-attorney representative and to send him all files related to the claims. (*Id.* at #68). Defendants have moved to dismiss claiming various forms of immunity. (Docs. 12–13, 15). For the reasons discussed below, the Court **GRANTS** Defendants' motions and **DISMISSES** the action **WITHOUT PREJUDICE**.

## BACKGROUND

The events of this case began with the death of Jimmie Herschal Sillavan. Sillavan was a U.S. Air Force veteran who, at the time of his passing, resided in Cambodia with his wife and child. (Doc. 3-1, #78). His widow, T.C., and his son, H.J.S., filed for social security survivor benefits in 2016. (*Id.*). For reasons that are not quite clear, T.C. purportedly authorized Michael Estep, the plaintiff here, to be her (and her son's) non-attorney representative before the SSA. (*Id.* at #70–77).[1] The forms authorizing Estep to serve as T.C.'s and H.J.S.'s representative were signed and submitted to the SSA. (Doc. 3, #60–61). At the time, Estep resided in Cambodia as well. (*Id.*). But in July 2017, he relocated to Ohio and notified the SSA of his change of mailing address. (*Id.*).

The SSA never acknowledged his change of address. Estep nevertheless sent numerous letters to the Commissioner of the SSA, asking him or her (Estep sent letters to multiple Commissioners) personally for an update on the claims of T.C. and

---

[1] The SSA allows non-attorneys to represent claimants before the agency provided certain criteria are met. 20 C.F.R. § 404.1705(b).

2

H.J.S. (*See* Doc. 3-1, #78–93). He also wrote to Tiera Adeyanju, an SSA employee in the Office of Earnings and International Operations—also a defendant here—asking for updates on the claims and demanding to know why he had received no correspondence from the agency as T.C.'s and H.J.S.'s representative. (*Id.* at #84–85). Apart from boilerplate replies stating that the agency would respond with details shortly, no SSA agent ever wrote back. (Doc. 3-1, #94–97).

Meanwhile, in Cambodia, T.C. contacted a Cambodian attorney. This attorney sent Estep a demand letter, which stated that the "lack of progress" on the Social Security claims "harmed the confidence and trust" that T.C. and H.J.S. put in Estep. (*Id.* at #102). Because of Estep's failure to "fulfill [the] obligations under the agreement" to represent T.C. and H.J.S., the attorney demanded $500,000 in monetary compensation for his clients. (*Id.*).

Estep responded by suing Kilolo Kijakazi, the Acting SSA Commissioner at the time the lawsuit was filed,[2] and Adeyanju. (Doc. 3). He asserts four "counts" that are difficult to parse. From what the Court can gather, Estep asserts that the two Defendants are liable to him because they violated: (1) SSA regulations, (*id.* at #61, 63–65); (2) the Constitution, (*id.* at #62); (3) state common law, (*id.* at #61–62, 64); and (4) the Privacy Act of 1974, 5 U.S.C. § 522a, (*id.* at #65–66). Importantly, though, the only person who is alleged to have engaged in any actual wrongful conduct is

---

[2] On December 20, 2023, Martin J. O'Malley was sworn in as the Commissioner. *Martin J. O'Malley Sworn in as Commissioner of Social Security Administration*, Soc. Sec. Admin. (Dec. 20, 2023), https://perma.cc/S5BA-S4YQ. Because the Court concludes that the Complaint raises only official-capacity claims against the Acting SSA Commissioner, *see infra* note 3, this changing of the guard has no impact on the Court's resolution of Estep's claims.

3

Adeyanju. And Estep specifically states in his Complaint that he is suing her both "personally and as an adjudicator of the SSA." (*Id.* at #59). The Commissioner's liability, on the other hand, is solely under a respondeat superior theory. Thus, giving Estep the benefit of the doubt, the Court concludes he is asserting both individual and official-capacity claims against Adeyanju. But, as to the Commissioner, he seems to assert only official-capacity claims.[3]

Based on these supposed violations, he seeks the following relief: (1) $500,000 in compensatory damages; (2) punitive damages; (3) fees and costs; and (4) declaratory and injunctive relief ordering the SSA to recognize him as T.C.'s and H.J.S.'s representative, to update their internal files with Estep's correct mailing address, and to provide him with "proper and timely notifications" regarding T.C.'s and H.J.S.'s claims. (*Id.* at #64, 66–69).

After the summons were returned executed, the United States moved to substitute itself for Adeyanju as the proper defendant with respect to Estep's state law tort claims under the Federal Tort Claims Act, 28 U.S.C. § 2679(d). (Doc. 11). Then, all three Defendants (the two individual Defendants plus the United States) each separately moved to dismiss (1) asserting various forms of immunity, including sovereign immunity, and (2) arguing that Estep failed to state a claim under Federal

---

[3] While recognizing that Estep is pro se, the Court notes that Estep was sophisticated enough to specify that he was suing Adeyanju both personally and in her official capacity. He did not so specify a personal-capacity claim against the Commissioner. The Court therefore gives that portion of the Complaint its most natural meaning and concludes that Estep is not suing the Commissioner in his individual capacity. *See Taggart v. New Century Fin. Servs.*, No. 20-4261, 2023 WL 6420815, at *3 (E.D. Pa. Oct. 2, 2023) ("As a sophisticated pro se litigant, [the] [Plaintiff] must be charged with knowledge of this standard." (cleaned up)).

Rule of Procedure 12(b)(6). (Docs. 12–13, 15). The Commissioner also contends that Estep lacks standing. (Doc. 15, #192–95). Estep responded to two of the motions (Doc. 17; Doc. 18) but failed to respond to the third, instead objecting to the United States' statutorily authorized substitution as a defendant, (Doc. 16).[4] Defendants replied, (Docs. 19–21), and the motions[5] are now properly before the Court.

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) or 12(b)(6), a plaintiff must allege "sufficient factual matter … to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up); *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) ("A plaintiff must demonstrate standing with the manner and degree of evidence required at the successive stages of the litigation." (cleaned up)). While a "plausible" claim for relief does not require a showing of probable liability, it requires more than "a sheer

---

[4] Estep argues that the United States should not be substituted as a party defendant for Adeyanju because her alleged failures to engage in a "two-way dialog" and her "absolute and total failure to recognize [Estep's] obligations and rights as a named representative" render her actions "well outside the scope of her office or employment." (Doc. 16, #204 (cleaned up)). But the Attorney General's certification provides prima facie evidence that Adeyanju was acting within the scope of her employment, which means that Estep is required to rebut this presumption, by "produc[ing] evidence that demonstrates that the employee was *not* acting in the scope of employment." *Singleton v. United States*, 277 F.3d 864, 871 (6th Cir. 2002) (emphasis added), *overruled on other grounds by Hawver v. United States*, 803 F.3d 693 (6th Cir. 2015). His hyperbole does not constitute "evidence that demonstrates" that Adeyanju was acting outside the scope of her employment. The Court therefore overrules Estep's "objection" and recognizes the United States as the substituted party defendant.

[5] Before Defendants moved to dismiss Estep's claims, Estep moved for default judgment against the Commissioner. (Doc. 8). But Estep's motion was based on a miscalculation of when the time for a responsive pleading was due. (Gov't Resp., Doc. 10, #133–34 (explaining that Estep based his motion on when the Clerk issued the summons rather than when it was served on the Commissioner)). Accordingly, Estep's motion for default judgment (Doc. 8) is **DENIED**.

5

possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. The complaint must allege sufficient facts that allows the Court to "draw the reasonable inference that the defendant is liable." *Id.*

At the motion-to-dismiss stage, the Court accepts the facts of the Complaint as true. *Id.* But that does not mean the Court must take everything a plaintiff alleges at face value, no matter how unsupported. The Court may disregard "naked assertions" of fact or "formulaic recitations of the elements of a cause of action." *Id.* (cleaned up).

## LAW AND ANALYSIS

The Court must assure itself of its subject-matter jurisdiction over the suit prior to discussing the merits. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93–95 (1998). The Court concludes it lacks jurisdiction over most of Estep's claims.

**A.      The Court Lacks Jurisdiction over Most of the Claims.**

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Without such jurisdiction—that is, the "power to declare the law"—a federal court must dismiss the case before it. *Steel Co.*, 523 U.S. at 94 (quoting *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868)).

The Constitution authorizes Congress to extend federal courts' subject-matter jurisdiction to "all Cases, in Law and Equity, arising under this Constitution[] [and] the Laws of the United States … [and] to Controversies to which the United States shall be a Party." U.S. CONST. art. III § 2. And Congress, with modest limitations, has chosen to do so. *See* 28 U.S.C. §§ 1331, 1346. However, Congress has also chosen to

6

strip federal courts of jurisdiction over specific subsets of cases that would otherwise fall within that broad jurisdictional grant. One such provision, found in the Social Security Act, compiled at 42 U.S.C. § 405(h), provides that "[n]o action against the United States, the Commissioner of Social Security, or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter." This provision strips the federal courts of jurisdiction to hear any claim "arising under this subchapter [(i.e., Title II of the Social Security Act)]" if that claim relies on either of the two sections listed, 28 U.S.C. § 1331 and § 1346, as the basis for the district court's jurisdiction. The first of those, 28 U.S.C. § 1331, is Congress's generalized grant of federal-question jurisdiction, which vests federal courts with the power to hear "all civil actions arising under the Constitution, laws, or treaties of the United States." The other section, 28 U.S.C. § 1346, grants federal courts jurisdiction to hear, as relevant here, any civil action against the United States for money damages based on the tortious activity of a federal employee. *Id.* at § 1346(b)(1).

Of course, for the jurisdiction-stripping provision to apply, the claim at issue must "aris[e]" under the Social Security Act. 42 U.S.C. § 405(h). But the Supreme Court has read that language broadly. In *Weinberger v. Salfi*, plaintiffs, representing a class of similarly situated claimants, challenged a provision in the Social Security Act that required surviving spouses to have had a relationship with the deceased wage earner for longer than a specified duration before they were eligible to receive benefits. 422 U.S. 749, 752–54 (1975). Plaintiffs alleged the provision violated the

7

Constitution and brought suit in federal district court (under federal-question jurisdiction)—the named plaintiffs had faced an adverse agency adjudication under the disputed provision, whereas the absentee plaintiffs were not alleged to have done so. *Id.* at 753–55, 763–64. The Court held the plaintiffs' claims arose under Title II of the Social Security Act, because the Act provided "both the standing and the substantive basis for the presentation of their constitutional contentions," which meant that § 405(h) stripped the district court of jurisdiction to hear the case to the extent that they had not proceeded before the agency. *Id.* at 760–61, 763–64. Distinguishing a similar provision relating to veteran's benefits, the Court noted the breadth of § 405(h)—extending to both "discretionary decisions of the Secretary or [] his nondiscretionary application of allegedly unconstitutional statutory restrictions." *Id.* at 762.

Not only do constitutional challenges to statutory provisions of the Act fall within § 405(h), but challenges to implementing regulations do as well. In *Shalala v. Illinois Council on Long Term Care, Inc.*, plaintiff, a long-term care provider, challenged certain Medicare regulations as unconstitutionally vague.[6] 529 U.S. 1, 6–7 (2000). The plaintiff sued the Secretary of Health and Human Services (invoking federal-question jurisdiction) in federal court, thereby bypassing an agency adjudication. *Id.* at 7–9. The Supreme Court held that the claim arose under the Medicare Act, even though the case involved an institution's seeking injunctive relief

---

[6] The Medicare Act incorporates verbatim the relevant provisions of the Social Security Act. 42 U.S.C. § 1395ii.

8

against the enforcement of a regulation, rather than the normal adjudication of an individual's benefits claim. *Id.* at 11–15.

One of the sections included in the "subchapter" that § 405(h) specifies is § 206 of the Act. 42 U.S.C. § 406. That statutory provision gives the Commissioner the power to "prescribe rules and regulations governing the recognition of agents or other persons … representing claimants before the Commissioner of Social Security." *Id.* at § 406(a)(1). The Commissioner, implementing § 206, has promulgated several regulations pertaining to claimant representatives, which include: 20 C.F.R. § 404.1705(b), which lists eligibility requirements for non-attorney representatives; 20 C.F.R. § 404.1707, which specifies how to appoint a representative; and 20 C.F.R. § 404.1715, which details the SSA's obligation to send notice of any administrative adjudication to representatives.

All of Estep's claims arise under § 206 of the Act, 42 U.S.C. § 406, or its implementing regulations. And almost all rely on either 28 U.S.C. § 1331 or § 1346 for jurisdiction.

Take Estep's claims that the Commissioner and Adeyanju are liable because they violated various regulations by refusing to recognize him as T.C.'s and H.J.S.'s representative and by failing to give him notice of the status of their claims. (*See* Doc. 3, # 62–65). To the extent Estep asserts these alleged regulatory violations as standalone claims, they arise under § 206's implementing regulations. And because the Court cannot conceive of any valid jurisdictional basis for hearing these claims

9

other than under 28 U.S.C. § 1331,[7] the Court does not have jurisdiction to resolve them.

Same for Estep's constitutional claims. Even though the Constitution is a separate legal rule from § 206 of the Act or any of its regulations, *Salfi* teaches that even a constitutional claim, if it falls under § 405(h), must be dismissed for lack of jurisdiction. 422 U.S. at 760–61. Here, the "standing and the substantive basis" for the constitutional claims is social security regulations. *Id.* at 761. Estep alleges that the Commissioner's and Adeyanju's failure to notify him of any administrative action or decision related to T.C. or H.J.S. violated his due process and equal protection rights under the Fifth and Fourteenth Amendments. (Doc. 3, #62). But the only reason Estep makes that contention is because the Commissioner and Adeyanju

---

[7] Estep asserts that jurisdiction is proper under 42 U.S.C. § 405(g). (Doc. 3, #60). But that section allows for judicial review only after a "final decision of the Commissioner of Social Security made after a hearing." Estep does not allege that such a hearing took place, so § 405(g) cannot support jurisdiction for this or any other claim. And this is true even though Estep claims that a hearing would be futile. *Salfi*, 422 U.S. at 762, 766 (holding that the prerequisite that a plaintiff proceed before the agency first before bringing suit in district court "may not be dispensed with merely by a judicial conclusion of futility").

Although Estep does not assert it as a jurisdictional basis, the Court notes that 5 U.S.C. § 702 would not help him. That provision states that a person suffering a legal wrong because of an agency action is entitled to judicial review and that any action on that basis should not be dismissed solely because it is against the United States. *Id.* While this section waives the sovereign immunity of the United States, *see generally Muniz-Muniz v. U.S. Border Patrol*, 741 F.3d 668 (6th Cir. 2013), the Supreme Court has held that it is not an independent jurisdictional grant. *Califano v. Sanders*, 430 U.S. 99, 107 (1977). And that jurisdictional grant is what Estep is lacking here.

Lastly, the mandamus statute, which gives federal courts jurisdiction over any action "in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff," also fails as a jurisdictional hook. 28 U.S.C. § 1361. Mandamus is an "extraordinary remedy" that is used "infrequently" and only available when no other remedies exist. *In re Syncora Guarantee Inc.*, 757 F.3d 511, 515 (6th Cir. 2014) (citation omitted). As explained below when discussing the Privacy Act, other remedies exist. *See infra* Part C. Mandamus is therefore unavailable.

10

allegedly violated 20 C.F.R. § 404.1715 by failing to notify him. (*Id.*). So the entire "substantive basis" for the constitutional claims lies in the regulations implementing § 206 of the Act, 42 U.S.C. § 406. And Estep does not point to any jurisdictional basis for hearing these constitutional claims nor does the Court know of such a jurisdictional hook, other than 28 U.S.C. § 1331. Accordingly, the Court does not have jurisdiction over these claims.

While the reasoning is a bit more complicated, the same is true for Estep's state common law claims. Estep asserts that the Commissioner and Adeyanju interfered with his contractual commitments, fiduciary duties, and "other legal obligations." (Doc. 3, #64–66). The Court construes this assertion as purporting to allege tort claims against the Commissioner and Adeyanju—akin to claims for tortious interference. The same logic pertaining to Estep's constitutional claims applies here. Even though state common law provides a separate legal rule, the Commissioner's or Adeyanju's liability under that separate legal rule exists only by reference to their actions *under* the regulations. Therefore, these claims also arise under the § 206's implementing regulations.

What about the jurisdictional hook for these claims? Estep does not allege a federal question under 28 U.S.C. § 1331. Rather he alleges that the Commissioner and Adeyanju, as federal employees, committed a state tort. The only basis for jurisdiction, then, is the Federal Tort Claims Act, found in 28 U.S.C. § 1346, which gives federal courts jurisdiction over claims against the United States for money damages stemming from its agents' torts. Because Estep's suit against the

11

Commissioner and Adeyanju in their official capacities is in effect a suit against the United States, *see Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985), that statute must be Estep's jurisdictional hook (if at all). But § 405(h)'s jurisdiction-stripping provision also applies to claims under 28 U.S.C. § 1346—§ 405(h) bars state tort claims that arise under § 206 of the Act and its implementing regulations from proceeding under § 1346. The Court therefore has no jurisdiction over these state law official-capacity claims.

Moreover, this is true even for Estep's claim against Adeyanju in her personal capacity. Federal court jurisdiction under 28 U.S.C. § 1346 is "subject to" 28 U.S.C. § 2679. And subsection (d) of § 2679 provides that whenever the Attorney General certifies that the federal employee was acting within the scope of her employment, the United States is substituted for the employee as a party defendant. The Attorney General has done so here, (Doc. 11), and Estep has provided no convincing argument to the contrary. *See supra* note 4. So because the United States has been substituted as a party defendant, the Court's jurisdiction again must come from 28 U.S.C. § 1346, which, for the reasons already stated, means that § 405(h) strips the Court of jurisdiction over this state law personal-capacity claim.

Estep's claims under the Privacy Act, 5 U.S.C. § 552a, however, are different. While those claims certainly arise under § 206's implementing regulations (for the same reason his other claims do), his Privacy Act claims do not depend on either 28 U.S.C. § 1331 or § 1346 for jurisdiction. That is because the Privacy Act itself independently grants federal courts jurisdiction to hear Privacy Act claims. 5 U.S.C.

12

§ 552a(g). And because the jurisdiction-stripping provision in § 405(h) does not strip courts of the jurisdiction the Privacy Act grants, the Court has jurisdiction to hear just Estep's Privacy Act claims.

**B.     Estep Has Standing to Pursue His Privacy Act Claims.**

Because the Court has jurisdiction to hear the Privacy Act claims, the Court turns to further consideration of those claims. But before evaluating the merits of those claims, the Court first must assess whether Estep has standing to bring them. After all, Article III § 2 of the Constitution limits a federal court's jurisdiction only to "Cases" and "Controversies." A plaintiff's standing to sue is one element of this constitutional requirement. *TransUnion*, 594 U.S. at 423. To demonstrate standing, a plaintiff must show: (1) that he suffered a "concrete, particularized, and actual or imminent" injury; (2) that the injury is traceable to the defendant's conduct; and (3) that a favorable ruling would redress that injury. *Id.* A future injury satisfies Article III's injury-in-fact requirement when it is "certainly impending" or there is a "substantial risk" that it will occur. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409, 414 n.5 (2013) (citations omitted); *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (citation omitted).

Estep has standing to bring his Privacy Act claims. He has alleged a concrete injury—risk of civil liability in Cambodia to the tune of $500,000. (Doc. 3, #62). And his claimed injury is not speculative—he does not generically claim some abstract risk of litigation exposure. Rather, he produced a demand letter from a Cambodian attorney describing an intent to sue Estep for Estep's alleged failure to represent T.C.

13

and H.J.S. effectively before the SSA. (Doc. 3-1, #102–04). The Court finds, for the purposes of the motion-to-dismiss stage, that Estep plausibly alleges a "substantial risk" of injury. *Susan B. Anthony List*, 573 U.S. at 158.

This injury is also traceable to Defendants' conduct. But for Defendants' alleged failures to recognize Estep as a non-attorney representative of T.C. and H.J.S., he would presumably have monitored the status of T.C.'s and H.J.S.'s claims—probably participating in the agency adjudication as well.[8]

Estep's injury would also be redressed by a favorable adjudication. While Estep's demand for $500,000 is likely not an available remedy under the Privacy Act, *see* 5 U.S.C. § 552a(g)(4) (limiting the compensatory award to actual damages only when an agency's actions against the plaintiff are intentional or willful), an order requiring the Commissioner in his official capacity to amend or correct the SSA's records relating to Estep is available. *Id.* § 552a(g)(2)(A). And to the extent that that requires the Commissioner to review Estep's representative status, that order could redress Estep's injuries. Recognition as T.C.'s and H.J.S.'s representative would at least plausibly mitigate his liability in the Cambodian suit.

So, the Court finds—for the purposes of the motions to dismiss—that Estep has standing to bring his Privacy Act claims.

---

[8] The Court is convinced by Estep's repeated contact with the Commissioner that he would likely have taken whatever opportunity was available to him to represent T.C. and H.J.S. (*See* Doc. 3-1, #78–93).

### C. Estep's Privacy Act Claims Fail on the Merits

While Estep has standing, there is also the separate question of whether he has plausibly alleged a viable claim. The Privacy Act allows any "individual to request amendment of a record pertaining to him" that is maintained by a federal agency. 5 U.S.C. § 552a(d)(2). The agency must then either amend the record or "inform the individual of its refusal to amend the record, … the reason[s for doing so, and] … the procedures" open to him to challenge the agency's determination. *Id.* § 552a(d)(2)(B). If the agency refuses to amend the individual's record after a challenge, or even fails to review the individual's challenge, then that individual may bring a civil action against the agency. 5 U.S.C. § 552a(g)(1). And an action against the head of the agency in his or her official capacity counts as an action against the agency for these purposes. *See Graham*, 473 U.S. at 165–66.

Importantly, 5 U.S.C. § 552a(f)(4) also provides that agencies must promulgate rules and "establish procedures for reviewing a request from an individual concerning the amendment of any record or information pertaining to the individual." The SSA has done so. Estep can, under 20 C.F.R. § 401.65, request a record correction. But to do so, Estep was required either to visit his local social security office or to write the manager of the SSA system of records, *not* to write the Commissioner of the agency repeatedly. 20 C.F.R. §§ 401.40(c), 401.65(a).

Estep does not allege that he requested a record correction in conformance with SSA regulations. He claims only to have written the Commissioner and Adeyanju. Because he never went through the SSA process for requesting or amending his record, the Court cannot reasonably infer, *Iqbal*, 556 U.S. at 678, that the *agency* (i.e.,

15

Adeyanju and the Commissioner sued in their official capacities, *Graham*, 473 U.S. at 165–66) failed to review his record request. Rather, the reasonable inference appears to be that *Estep* failed to request a record correction in the proper manner. 5 U.S.C. § 552a(g)(1). Because Estep has not plausibly alleged that the agency failed to review his request, he has failed, as yet, to plead a sufficient claim for relief under the Privacy Act. But the Court acknowledges that Estep could conceivably address this failure through amendment. Thus, the Court will dismiss this claim without prejudice.

## CONCLUSION

For the reasons stated, the Court **DENIES** Estep's Motion for Default Judgment (Doc. 8) and **GRANTS** Defendants' motions (Docs. 12, 13, 15) to dismiss all of Estep's claims. Because the Court lacks jurisdiction over many of the claims, and because the Privacy Act claim is "capable of being cured by amendment," *Stewart v. IHT Ins. Agency Grp., LLC*, 990 F.3d 455, 457 n.* (6th Cir. 2021), the Court **DISMISSES** all of Estep's claims **WITHOUT PREJUDICE**. And because the Court is dismissing all of the claims in the Complaint, the Court further makes clear that it **DISMISSES** the action itself. *See Boxill v. O'Grady*, 935 F.3d 510, 516–17 (6th Cir. 2019) (noting that when a dismissal is without prejudice, "[t]he best practice for a district court … is to make its intention to dismiss an entire action (or not) clear in its dismissal order").

Accordingly, the Court **DIRECTS** the Clerk to enter judgment and to **TERMINATE** this matter on the Court's docket.

**SO ORDERED.**

January 11, 2023
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**

17